IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |   |
|---|---|---|
| IN RE JAMES E. HENDERS | ) ) ) ) ) | No. 12-C-1147 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On January 23, 2012, James E. Henders, a member of the petit jury in United States v. Hollnagel (10 CR 195), contacted my chambers and told a member of my staff that he believed he had been unfairly and unlawfully terminated by his employer, hhgregg, Inc. ("hhgregg"), because of his jury service. After Mr. Henders met with me and my staff on January 25, 2010, and January 26, 2012, I informed hhgregg in a letter sent January 26, 2012, of Mr. Henders's claim and asked hhgregg to provide a response to the court by February 9, 2012. As of February 17, 2012, hhgregg has not responded to my letter.

Turning to the statutorily required determination of whether Mr. Henders's claim has probable merit, I will conduct my analysis without the response I requested from hhgregg, which hhgregg apparently chose not to provide. Having evaluated all of the information provided by Mr. Henders, I find, for the reasons set forth below, that there is probable merit to Mr. Henders's claim, and I hereby appoint counsel to represent Mr. Henders in accordance with 28 U.S.C. § 1875(d)(1).

FACTUAL BACKGROUND[1]

Mr. Henders was hired as a full time electronics sales associate at the hhgregg store in Arlington Heights on August 8, 2011. The store opened for business in September of 2011. Since then, the store has not been doing well. Sales have been slow, and two previous managers have left voluntarily or were let go. At the time of Mr. Henders's termination, his direct supervisor was the electronics manager Mr. Matt Talley, and the store manager was Mr. Doug Kenter.

Sales associates at hhgregg are hourly employees paid by commission for their sales, but are guaranteed to make at least minimum wage ($8.25/hr). If they earn sufficient commissions to entitle them to more than minimum wage, they can keep the extra. If their commissions entitle them to less than minimum wage, they are paid minimum wage, but they are required to pay back the deficiency in a future pay period in which they earn more than minimum wage. A sales associate who earns less than minimum wage is said to be "in draw." When he was trained as a new sales associate, Mr. Henders was told that sales associates will receive a warning if they are in draw during any two-week pay period. If an associate receives three warnings, he or she will be terminated.

Mr. Henders has been in draw during every two-week pay period since he was hired, with the exception of the two-week period that included Black Friday in November 2011. Every other sales associate, however, has had a similar record because of store-wide problems causing slow sales. While Mr. Henders was working at hhgregg, he was never tardy to work, and he called in sick only once. Nonetheless, the store managers gave Mr. Henders his first "in draw" warning in late November, and he received his second warning in December.

---

[1] The following facts were provided by Mr. Henders. The court is cognizant of the fact that, at this point in the proceedings, hhgregg has not represented its version of these events.

Mr. Henders received a jury summons on January 4, 2012, requiring him to appear at the Dirksen U.S. Courthouse in Chicago on January 17. The summons stated that his service would be required for up to ten to twelve weeks. Shortly after receiving the summons, Mr. Henders gave a copy to the appliances manager at the store where he worked, because Mr. Talley and Mr. Kenter were not working that day. Sometime thereafter Mr. Henders told Mr. Talley that he needed Tuesday, January 17, off from his work at hhgregg to report for jury service. Mr. Talley scheduled January 17 as Mr. Henders's day off, but made no other comments about his jury service.

During the week of January 9, Mr. Henders met with Mr. Talley and Mr. Kenter for his January Performance Review. Mr. Talley and Mr. Kenter knew of Mr. Henders's jury summons at the time, but did not mention it. Instead, they asked Mr. Henders to evaluate his strengths and weaknesses, and encouraged him to increase his sales. They did not issue him a third warning for being in draw.

On January 17, 2012, Mr. Henders reported for jury service and was selected to serve on the jury hearing the trial in United States v. Hollnagel (10 CR 195). Mr. Henders learned that the trial would start on January 19 and last six to eight weeks, not ten to twelve weeks. Mr. Henders returned to work on January 18 and told the appliance manager that his jury service would last six to eight weeks. The next time Mr. Henders went into work, on Saturday, January 21, he told Mr. Kenter that he would not be in on Sunday, January 22, even though he was scheduled to work. Mr. Kenter responded to Mr. Henders by saying "ok."

Later that day, January 21, Mr. Kenter and Mr. Talley called Mr. Henders into their office. They told him that they were giving him his third warning that he was in draw, and that he would consequently be terminated. They commented that he had not been selling enough merchandise, and

3

indicated that he had not been following the store's "point process" for approaching customers. Mr. Kenter and Mr. Talley did not mention Mr. Henders's jury service, but Mr. Henders brought it up to see if he would be paid for the days he had been in jury service the week before. Mr. Kenter told him that he would be paid for Friday, but that he had been off Tuesday and Thursday, and would not be paid. Mr. Henders left and has not returned to work since.

Although every sales associate at the store had been almost constantly in draw prior to Mr. Henders's termination, only one other had been terminated for that reason. That associate, who was "deep in draw," according to Mr. Henders, was terminated in October 2011, and the store gave him the option to switch to working in the warehouse, rather than terminating him outright. Of the sixteen electronics sales associates hired with Mr. Henders when the store he worked at opened, only two are left. All the others have been fired or left because, according to Mr. Henders, "they weren't treated well." In addition to the two remaining sales associates, there are five or six appliance sales associates and three more recent hires, all of whom who have been consistently in draw, but who have not been terminated.

hhgregg has a policy to pay employees on jury service minimum wage for the first thirty days of their jury service, and to pay them half of minimum wage for jury service thereafter.

LEGAL STANDARD

In 1978, Congress enacted 28 U.S.C. § 1875 to accord statutory protection to the employment status of federal jurors during jury service and to give federal district courts original jurisdiction under 28 U.S.C. § 1363 to hear civil claims brought by jurors alleging wrongful termination in retaliation for jury service. H.R. Rep. No. 95-1652, at 1 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5477, 5477. Previously, courts had used their contempt powers to punish employers

that had retaliated against employees, but relying on contempt powers had been ineffective because jurors were frequently reluctant to report the intimidation or threats and employer action was purposefully designed to evade an effective response by the courts. H.R. Rep. No. 95-1652, at 7, *reprinted in* 1978 U.S.C.C.A.N. at 5480. Section 1875 performs several functions to protect jurors from unlawful termination. The statute puts employers on notice of their legal duties, offers employees assurances that their rights are protected by the law, and gives district courts explicit jurisdiction to hear matters regarding juror discrimination.

Section 1875 creates a statutory right of protection for federal jurors' employment, stating that "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States." 28 U.S.C. § 1875(a). Under the statute, a juror is entitled to damages for any loss of wages or other benefits suffered due to a violation. 28 U.S.C. § 1875(b)(1). Furthermore, the court may enter injunctive relief, such as reinstatement of a juror's employment. 28 U.S.C. § 1875(b)(2). A civil penalty of not more than $5,000 per violation may be imposed on the employer as well. 28 U.S.C. § 1875(b)(3).

Upon application by an individual claiming wrongful discrimination based on his or her juror status, the court may appoint counsel for the individual if the claim is found to have "probable merit." 28 U.S.C. § 1875(d)(1). "A probable merit threshold is a low standard, whereby the court finds it is *likely* for the claim to have merit." *In re Steven Geocaris, a Member of a Petit Jury*, No. 1:08-cv-07213, 2008 WL 5263145, at *2 (N.D. Ill. Dec. 17, 2008) (emphasis in original). Appointed counsel "shall be compensated and necessary expenses repaid to the extent provided by section 3006A of title 18, United States Code," the statute addressing payment of appointed counsel for

criminal defendants. 28 U.S.C. § 1875(d)(1). Additionally, should an employee prevail, the court may award attorney's fees to the employee pursuant to 28 U.S.C. § 1875(d)(2).

## ANALYSIS

The court's role at this time is to assess whether there is probable merit to Mr. Henders's claim that hhgregg terminated him because of his jury service. Given the nature of this rather low standard, the court finds based on the facts in the record that there is probable merit to Mr. Henders's claim.

The stated reason for Mr. Henders's termination was that he had received three warnings for being "in draw," and that his sales were unsatisfactory. According to Mr. Henders's uncontradicted account, however, his poor sales record did not distinguish him from other sales associates who had not been terminated. Only one other sales associate was terminated for being in draw, and that associate was transferred, not terminated outright. Accordingly, it is probable that hhgregg's stated reason for terminating Mr. Henders was a pretext. *See United States ex rel. Perkins v. Sara Lee Corp.*, 839 F. Supp. 393, 402 (W.D. Va. 1994).

Moreover, it is plausible to infer that the real reason for Mr. Henders's termination was his jury service, because the only difference between Mr. Henders and the other similarly situated sales associates is that Mr. Henders had just informed hhgregg that he would need to miss work for six to eight weeks because of his jury service. That inference becomes even more plausible when one considers hhgregg's jury policy, which requires it to pay jurors during their jury service. The policy provides a plausible motive for hhgregg's actions, because hhgregg may have fired Mr. Henders to avoid paying him under the policy.

At this preliminary stage, the court therefore finds there is sufficient evidence to establish

the statutorily required "probable merit" to Mr. Henders's claim that hhgregg terminated him because of his jury service in violation of 28 U.S.C. § 1875. In making this ruling, the court emphasizes that this finding is based on a preliminary evaluation of Mr. Henders's claim and constitutes a preliminary finding that Mr. Henders's claim is likely but is not certain to have merit.[2] Appointed counsel should undertake a further pre-filing investigation to make a determination consistent with Federal Rule of Civil Procedure 11 of whether a civil suit should be filed.

## CONCLUSION

The court orders the appointment of counsel for juror James E. Henders pursuant to 28 U.S.C. § 1875 and appoints attorney Richard J. Gonzalez to represent juror James E. Henders in his claim of juror discrimination against his employer, hhgregg, Inc. Appointed counsel is requested to contact Mr. Henders upon receipt of this appointment.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: February 17, 2012

---

[2] The term "probable" is defined as "[r]elatively likely but not certain; plausible." *The American Heritage Dictionary* 987 (2d College ed.1982).